**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 1:19CR758 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **PABLO LATORRES,** | |
| **Defendant** | **MEMORANDUM OF OPINION AND ORDER ON DEFENDANT'S SECOND MOTION FOR PRETRIAL RELEASE** |

Currently pending is Defendant Pablo Latorres's Second Motion for Pretrial Release filed on July 9, 2020 ("Defendant's Motion"). (Doc. No. 39.) The Government filed a Response to Defendant's Motion on July 12, 2020 ("the Government's Response"). (Doc. No. 40.) Defendant did not reply to the Government's Response. For the reasons set forth below, Defendant's Motion is DENIED.

**BACKGROUND**

Defendant is charged with the Conspiracy to Possess with Intent to Distribute Controlled Substances (methamphetamine), in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) in Count 1 of the Indictment; and with Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) in Count 3 of the Indictment. These charges carry a rebuttable presumption of detention.

At his arraignment on December 12, 2019, Defendant waived his right to a detention hearing and agreed to be detained without bail pursuant to 18 U.S.C. § 3142(c) and (i), but reserved "the right to raise the issue of detention at a later date should circumstances change."

(Doc. No. 9.) On April 13, 2020, Defendant filed his first motion for pretrial release, which was denied by this Court in a Memorandum of Opinion and Order issued on April 15, 2020. (Doc. Nos. 31, 33.)

In Defendant's Motion, Defendant requests that this Court allow him to be released from incarceration pending trial based on the "'extraordinary and compelling reasons' presented by his vulnerability to the novel coronavirus, also known as COVID-19", his assertion that he "has been suffering from symptoms consistent with COVID-19", and the fact that since the filing of his first motion for pretrial release due to COVID-19 and denial of it, "numerous cases of COVID-19 have been discovered at NEOCC within the detainee population as well as among the employees." (Doc. No. 39, PageID # 134.)

According to Defendant, the Court can now, pursuant to 18 U.S.C. § 3142(f) find that his detention hearing may be reopened because "information exists that was not known to the movant at the time [he waived his detention hearing] and that has a material bearing on this issue." (Doc. No. 39, PageID # 138.). However, under 18 U.S.C. § 3142(f), the new information must have a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. Defendant does not address the issue of how the existence of COVID-19 at the Northeast Ohio Correctional Center where he is detained would have a material bearing on whether there are conditions of release that will reasonably assure his appearance and the safety of any other person and the community.

Defendant correctly asserts that in denying his first motion for release, the Court considered and relied in part upon the Government's representations that there were zero confirmed cases of COVID-19 at Northeast Ohio Correctional Center ("NEOCC") and that

Defendant did not allege that he had any COVID-19 symptoms or that he had been exposed to any individuals with COVID-19 symptoms. Attached to Defendant's Motion are copies of documents, specifically a chart from the Ohio Department of Rehabilitation and Correction and eight (8) letters from the Warden or Acting Warden of NEOCC, seven of which are addressed to "Dear Detainee",[1] and one of which is addressed to "Dear Staff"[2] demonstrating that there are cases of COVID-19 among detainees, employees and contractors at NEOCC.

Seven of the eight letters from the Warden or Acting Warden addressed "Dear Detainee" read in relevant part as follows: "While there has been a positive case identified at Northeast Ohio Correctional Center it's important to note that you have not been identified as an individual who should be quarantined due to possible exposure to COVID-19, as outlined by the current Centers of Disease Control and Prevention (CDC) guidelines." One letter addressed "Dear Detainee" reads in relevant part that "[y]ou have been identified as an individual who should be quarantined due to possible exposure to COVID-19, as outlined by the current Centers for Disease Control and Prevention (CDC) guidelines." All seven letters addressed "Dear Detainee" read in relevant part as follows: "If you believe you have developed symptoms of COVID-19, which include – but not limited to – coughing, fever, tiredness, or difficulty breathing, please notify staff so that you can get immediate medical attention."

Anticipating that the Government would argue that significant steps have been taken at NEOCC to protect the detainees, Defendant argues that these steps have not prevented the spread of COVID-19 at the facility. Also, Defendant asserts that he and other detainees have

---

[1] The seven letters addressed "Dear Detainee" are dated June 26, 2020, June 19, 2020, June 17, 2020, June 15, 2020, June 12, 2020, June 10, 2020, June 4, 2020, and May 31, 2020.

[2] There are two copies of what is the same letter dated June 4, 2020 addressed "Dear Staff".

lost their sense of smell and taste "and experienced other COVID-19 symptoms." (Doc. No. 39, PageID # 138.)  However, Defendant has not elaborated upon or described what these "other COVID-19 symptoms" are.  Moreover, Defendant has not presented any sworn statement or medical records, or NEOCC records pertaining to him personally, demonstrating that he has lost his sense of smell and taste or so claimed to anyone at NEOCC, or that he was actually quarantined for exposure to someone with COVID-19.  Indeed, even if Defendant so demonstrated, the following remains.  A loss of sense of smell and taste is subjective.  Defendant has not alleged, much less demonstrated that he is suffering from objective or verifiable symptoms.  Defendant acknowledges that he has not been diagnosed with COVID-19.  He does allege that he suffers from several debilitating health conditions and therefore, is at an enhanced risk for serious, long-term health problems, and even death, from COVID-19.  However,, Defendant does not specify what he describes as "debilitating health conditions" from which he allegedly suffers.

Defendant asserts that "[g]iven that BOP has already identified [him] as being eligible for home confinement under the more strenuous BOP regulations and criteria because of his Medical Care Level II designation and illnesses, as well as the fact that [he] has never had any disciplinary infractions while [sic] in custody, there can be little question about the extraordinary and compelling reasons in [his] case." (Doc. No. 39, PageID # 140.)  However, Defendant has not provided any documentation or evidence demonstrating that he has been so identified by the BOP regulations, or that he has been designated Medical Care Level II, or that he has not had any disciplinary infractions while in custody.

Finally or in his conclusion, Defendant asserts that he "has demonstrated extraordinary and compelling reasons for compassionate release and asks this Court to reduce

his sentence to time served, with an additional period of supervision, with additional conditions of supervision which include residential in-patient addiction rehabilitation treatment, and a period of residence at a sober living facility." (Doc. No. 39, PageID # 140.)

In the Government's Response, the Government correctly asserts that whether there are "extraordinary and compelling reasons" is the standard applicable to motions for compassionate release, as distinguished from the standards for pretrial release set forth in the Bail Reform Act and 18 U.S.C. §§ 3142(f), 3142(i).  Specifically, under 18 U.S.C. § 3142(f), a detention hearing "may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  Pursuant to 18 U.S.C. § 3142(i), "[t]he judicial officer may, by subsequent order permit the temporary release of [a pretrial detainee], in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

The Government directs this Court's attention to *United States v. Clark*, No. 19-cv-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020) citing 18 U.S.C. § 3142(f), wherein the district court stated:

> The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.  But, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation.  Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release under § 3142(i).  In making that determination,

> the [Court] will evaluate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Id.*at *3. The Government notes that at least two district courts in the Sixth Circuit have followed this approach, and urges this Court to do so as well, citing *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2-3 (S.D. Ohio Mar. 30, 2020), and *United States v. Morale*, No. 5:19-CR-741, 2020 WL 1984900, at *1-3 (N.D. Ohio Apr. 27, 2020). This Court agrees with these district courts in this Circuit that have found the guidance provided by *Clark* to be a useful framework for addressing requests for release under § 3142 and will apply the framework set forth therein.

## ANALYSIS

### First factor:  the original grounds for the defendant's pretrial detention

Although the magistrate judge did not conduct a detention hearing because Defendant waived his right to one and Defendant agreed to be detained without bond, it is likely that if a motion for bond had been made, the magistrate judge would have denied the motion. That is because Defendant's criminal history demonstrates that he represents a danger to others and the community. The Pretrial Services report demonstrates that Defendant has convictions for illegal manufacture of drugs and illegal assembly or possession of chemicals for manufacturing drugs, trafficking in heroin, and two counts of having a weapon while under disability. While on probation for one of those convictions, he violated the conditions of his probation twice, the second time resulting in the issuance of a capias for his arrest. Also, Defendant has another case pending alleging aggravated trafficking in drugs and trafficking in heroin. The Pretrial Services report

indicates he is not employed and is 39 years old.  Considering that the current charges Defendant faces are the possession and intent to distribute controlled substances, specifically methamphetamine, it is clear that his prior convictions for drug trafficking and penalties associated therewith have not deterred him and his potential to continue to engage in this kind of conduct poses a danger to the community. Moreover, the significant term of imprisonment that Defendant faces if convicted and his history of violating probation makes him a flight risk.  The U.S. Pretrial Services & Probation Officer opined that there was no condition or combination of conditions that would reasonably assure Defendant's appearance as required and the safety of the community and therefore, recommended that Defendant be detained.

Indeed, even though Defendant has not set forth any release plan, specifically including where and with whom he would reside, and even if his assertion that he has been identified as being eligible for home confinement under the BOP regulations and criteria is construed as a request to place him on home detention with GPS monitoring, the following remains.  While location monitoring may offer useful information about where Defendant is, it would provide little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would make it all too easy for him to resume his involvement in the trafficking of controlled substances without detection.

For the above reasons, the Court find that the first factor weighs in favor of detention and against pretrial release.

**Second Factor:  the specificity of the defendant's stated COVID-19 concerns**

As set forth above, while Defendant has asserted that he has lost his taste and smell, he has not submitted any documentation or other evidence demonstrating that he has reported this subjective complaint to anyone at NEOCC, despite being advised in several letters that he should

report any symptoms of COVID-19. Defendant has not alleged, much less demonstrated, any other objective or medically verifiable health issues that make him more vulnerable to COVID-19. And, although one letter directed to a detainee indicated that the detainee had been exposed to someone with COVID-19 and should be quarantined for 14 days, there is no evidence that this letter was directed to Defendant or that he was actually quarantined because of any such exposure. Finally, although Defendant alleges that he has been identified by the BOP as being eligible for home confinement because of his Medical Care Level II designation and illnesses, he has not substantiated these allegations in any way. Indeed, Defendant acknowledges that he has not tested positive for COVID-19. Thus, this factor weighs against Defendant's release.

### Third Factor: the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the Defendant

As already noted, nowhere in Defendant's Motion does he set forth a proposed release plan, much one that is tailored to mitigate or exacerbate other COVID-19 risks to the Defendant. So, this factor weighs against Defendant's release.

### Fourth Factor: the likelihood that the Defendant's proposed release would increase COVID-19 risks to others

The fourth factor also weighs against Defendant's release. Given Defendant's probation violations, the Court is not convinced that he would be able to comply with conditions of release. Therefore, he would pose a potential risk to law enforcement if it was necessary to take him back into custody. Also, if Defendant were to be placed on location monitoring, pretrial officers would be exposed to COVID-19.

Accordingly, the Court finds that Defendant has not established his burden of demonstrating reasons sufficient to persuade the Court that temporary release is proper.

### CONCLUSION

For the reasons stated above, as well as the reasons set forth in the Government's Response, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Date:  July 30, 2020

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE